**In re Dale L. SETTLES and Jean E. Settles, Debtors.**

**Dale L. SETTLES and Jean E. Settles, Petitioners/Debtors,**

**v.**

**UNITED STATES of America, acting Through the FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE, and Commodity Credit Corporation, Respondents/Creditors.**

**Bankruptcy No. 86–81252.**

United States Bankruptcy Court, C.D. Illinois.

Jan. 30, 1987.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, Ill., for petitioners/debtors.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for respondents/creditors.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter involves the latest attempt by farm debtors to obtain the "sealing profit" from a government price support program over the claim of the Farmers Home Administration (FmHA), a secured creditor. Before discussing the issues raised by this particular case, a brief discussion of both the applicable government price support program and this Court's previous holding on the question of who is entitled to the "sealing profit" is appropriate.

The United States Department of Agriculture's Commodity Credit Corporation (CCC) offers to farmers a farm commodity price support program which generates "sealing profits" (PROGRAM). Under this PROGRAM, the CCC loans the farmer money at a predetermined price per bushel rate of the crop. If the open market price of the crop rises above the loan rate, the farmer can sell the crop on the open market and repay the loan. Any excess proceeds are available for the farmer's use. However, if the open market price of the crop drops below the loan rate, the farmer can dispose of the crop through the CCC at the subsidized rate, thereby realizing a profit the farmer would not be able to otherwise obtain. The difference between the loan rate and the open market price is what is known as the "sealing profit". The farmer can also borrow from the FmHA, another branch of the federal government. In so doing, the farmer gives the FmHA a security interest in the crop, which when harvested becomes the subject of the PROGRAM.

In a previous decision in *In re George*, 62 B.R. 671 (1986) this Court held

where the farmer had harvested the crop which was subject to the FmHA's security interest, placed the crop in the PROGRAM, disposed of the crop through the CCC, that the FmHA was entitled to the "sealing profit" over the claim of the farmer that pursuant to Section 552(b) of the Bankruptcy Code he was entitled to the "sealing profit" because the equities of the case (his ability to participate in the program and his efforts to care for the crop) justified not extending the FmHA's security interest, taken before the farmer's bankruptcy, to proceeds (the "sealing profit") arising after the filing of bankruptcy.[1]

This Court now returns to the issues of the case presently before it. The DEBTORS gave to the FmHA a security agreement on their 1986 crop of corn and soybeans, and the proceeds thereof. The security agreement provided the DEBTORS would

"not abandon the collateral or encumber, conceal, remove, sell, or otherwise dispose of it, or any interest therein, or permit others to do so, without the prior written consent of the secured party".

The DEBTORS harvested the crop and wanted to participate in the PROGRAM. Rather than placing the harvested crop into the PROGRAM, the DEBTORS, in an attempt to avoid the effects of this Court's holding in *In re George* and obtain the "sealing profit" free and clear of the FmHA security interest, filed a petition requesting authorization to participate in the PROGRAM with a substitute crop. Their petition seeks leave to deliver to FmHA the harvested crop to reduce their debt to the FmHA, for permission to purchase from an outside source an equal amount and type of crop and to participate in the PROGRAM with the substituted crop under applicable regulations of the CCC, and for permission to borrow from the CCC

---

1. The farm debtor appealed and the appeal is pending. For the first time on appeal the farm debtor, relying on *In re Schmaling*, 783 F.2d 680 (7th Cir., 1986), has taken the position the security interest given to the FmHA did not specifically make any claim to general intangibles or contract rights (the right to receive a government subsidy payment), the security agreement only referred to the crop and its proceeds, "sealing profits" are not proceeds, and therefore the "sealing profit" was not subject to the FmHA's security interest. The farm debtor in *In re George* has difficulty determining the exact relationship he had with the FmHA. His initial claim under Section 552(b) recognized the FmHA had a security interest in the crop and the "sealing profit" as proceeds and contended he was entitled to the "sealing profit" for equitable reasons. On appeal his claim is that the FmHA is unsecured. The farm debtors in *In re George* and in the case before this Court are represented by the same attorney. The DEBTORS in this case have taken the same position as the farm debtors in *In re George*. This Court does not believe that the holding of *Schmaling* is controlling as to either *In re George* or the case presently before this Court. In *Schmaling* the debtors were participating in the federal government's payment in kind ("PIK") program under which farmers received surplus grain in exchange for an agreement not to plant their crop. The creditor held a security interest in the crops and proceeds. After first noting Section 9–306 of the Uniform Commercial Code, as adopted in Illinois, Ill.Rev.Stat.1985, Ch. 26, para. 9–306, required a sale, exchange, collection, or other disposition of the collateral for

there to be proceeds, the court went on to hold the PIK payments were not proceeds, as no crops were planted and there were no crops which could be disposed of and which could give rise to proceeds. The holding in *Schmaling* requires analysis of the specific federal government program. Where the federal government program generates a payment without the creation of a crop in the first instance—i.e. a PIK payment made without the planting of a crop which can be disposed of, the creditor's security agreement must specifically claim the government payment and cannot rely upon a claim against proceeds. But where the federal government program generates a payment through the disposition of a crop actually in existence and subject to the creditor's security agreement, the creditor can claim the payment as proceeds. Unlike the factual situation in *Schmaling*, in *In re George* there was a crop in existence which was subject to the FmHA security agreement, that crop was disposed of through the CCC, and that disposition produced proceeds which included the "sealing profit". Also unlike the factual situation in *Schmaling*, in the case presently before this Court, there was a planted crop which was subject to the FmHA security agreement. However, unlike the factual situation in *In re George*, that crop is to be returned to the FmHA to reduce the DEBTORS' debt. As is pointed out later in this Opinion, once that occurs, the FmHA will no longer hold any security which can be disposed of and which can give rise to proceeds.

an amount of money sufficient to acquire the substitute crop and to encumber the substitute crop to the CCC pursuant to applicable regulations.

Their theory is that CCC regulations permit participation in the PROGRAM with a substituted crop and once the FmHA receives the crop which is subject to the security agreement, the FmHA no longer has any claim to any other crop which the DEBTORS place in the PROGRAM, or its proceeds. Therefore, the "sealing profit" arising out of the substituted crop would be theirs, free and clear of the FmHA's security agreement.

The FmHA takes two positions: first, until the CCC acts on the DEBTORS' request to participate in the PROGRAM with a substituted crop there is no case or controversy pending for this Court to adjudicate; second, if the CCC permits the DEBTORS to participate in the PROGRAM with a substituted crop any "sealing profit" arising out of the substituted crop is proceeds subject to FmHA's security agreement, as the PROGRAM was never designed to permit a farm debtor to receive a "sealing profit" when another government agency is owed money.

■ To a limited extent this Court agrees with the FmHA's first position. Participation in the PROGRAM is governed by the CCC manual entitled as "1– Loans and Purchases". This manual is an elaborate set of regulations governing, among other things, qualification for participation in the PROGRAM. However, the DEBTORS do not seek an order from this Court directing the CCC to permit their participation in the PROGRAM. What they seek is an order authorizing their participation in the PROGRAM if they are eligible. Until the DEBTORS apply and the CCC acts on the application, it is not possible for this Court to determine whether there has been compliance with the regulations found in that manual. If they are found eligible and the CCC permits participation with a substituted crop, that issue becomes moot. If the CCC finds them ineligible, DEBTORS intend to obtain a review of that determina-

tion, which might include litigation in this Court. Therefore, this Court will permit their participation in the PROGRAM if they are eligible, and will leave for possibly another day the issue of whether the DEBTORS have the right to participate in the PROGRAM with a substituted crop.

■ The FmHA also contends the "sealing profit" arising out of the substituted crop is proceeds which is covered by its security agreement. Section 9–306 of the Uniform Commercial Code as adopted in Illinois, Ill.Rev.Stat.1985, ch. 26, para. 9–306, defines "proceeds" as being "whatever is received upon the sale, exchange, collection or other disposition of the collateral." The DEBTORS propose to use the harvested crop, which is subject to the FmHA's security agreement, to reduce the debt to the FmHA. Once the FmHA receives the harvested crop, the FmHA will have received its security and it will no longer have any security which can be disposed of and give rise to proceeds. Any further action by the DEBTORS involving the borrowing from the CCC, the acquiring of a substitute crop, and participating in the PROGRAM with a substituted crop would not involve FmHA security or its proceeds. Therefore, the FmHA would have no claim to the "sealing profits".

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.