### In re Frank GEORGE, Sr. and Ellen George, Debtors.

#### No. 86–1308.

United States District Court, C.D. Illinois.

Aug. 4, 1987.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, Attorney for Debtors.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for U.S. acting through Farmers Home Admin.

### ORDER

MIHM, District Judge.

This case is an appeal from the decision of the bankruptcy court which presents the

issue of whether the "sealing profit" derived by the Debtors under the Commodity Credit Corporation's (CCC) price support program should be paid to the Debtors or the creditor with a security interest in the crops involved in the CCC program. The bankrupty court held that the "sealing profit" was proceeds of the secured creditor's collateral and ordered the Debtors to pay that amount to the secured creditor. The Debtors appealed that judgment pursuant to 28 U.S.C. § 158(a), and this Court AFFIRMS the decision of the bankruptcy court.

FACTS

The facts in this case are not in dispute, and are set forth in *In re George*, 62 B.R. 671 (Bankr.C.D.Ill.1986). On May 1, 1985, the Farmers Home Administration (FmHA) loaned the Debtors $100,000 and perfected a security interest in the Debtors' 1985 crops. In the security agreement, the Debtors gave the FmHA a security interest in "all crops, annual and perennial, and other plant products now planted, growing, or grown or which are hereafter planted or otherwise become growing crops on certain described real estate of the debtors." The FmHA properly filed a financial statement covering crops planted or to be grown on the Debtors' land. The Debtors planted crops in the spring of 1985.

On October 21, 1985, the Debtors filed a Chapter 11 petition in bankruptcy without repaying the FmHA loan. On December 26, 1985, the Debtors "sealed" their 1985 corn crop of 30,867 bushels of corn pursuant to the government's Commodity Credit Corporation (CCC) price support program and received a non-recourse loan of $79,-945.53 from the CCC. Under this program, the CCC loans farmers money at a predetermined per bushel rate for corn the farmer has grown. If the market price for corn stays below the rate at which the CCC loaned money to the farmer, the farmer "seals" the corn at the subsidized per bushel rate, and turns it over to the CCC, which gives him a profit over what he would have been able to obtain on the open market. (If the market price of the corn rises above the loan amount, the farmer may sell the corn on the open market and repay the loan). The Debtors obtained a CCC loan at the rate of $2.59 per bushel for their corn, and because the market rate was $2.30, the Debtors sealed the corn and realized an above-market profit of $.29 per bushel.

In the bankruptcy court, the Debtors obtained reimbursement for expenses in harvesting the crop. However, the bankruptcy court held that the FmHA was entitled to the $8,700 "sealing profit," based upon 30,000 bushels of corn at $.29 per bushel. It is this decision of the bankruptcy court which the Debtors are presently appealing.

DISCUSSION

The Bankruptcy Code, 11 U.S.C. § 552 provides:

"(a) Except as provided in subsection (b) of this Section, the property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
(b) Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this Title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of this case and to proceeds, products, offspring, rents, or profits of such property, then such security interest extends to such proceeds, products, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

Under the UCC, a security interest will continue in proceeds of collateral described in the security agreement unless the agreement or the secured party specifies otherwise. *Matter of Schmaling*, 783 F.2d 680, 682 n. 2 (7th Cir.1986). According to § 9–306(2), Ill.Rev.Stat., ch. 26, except where the Illinois Uniform Commercial

Code (UCC) otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise. The security interest also continues in any identifiable proceeds, including collections received by the debtor.

The Debtors argue that they are entitled to the "sealing profit" because that profit is an interest acquired by the estate after the commencement of the bankruptcy case (11 U.S.C. § 541(a)(7)) and it will aid in the rehabilitation of the Debtors. The CCC program under which the Debtors acquired the "sealing profit" is a program for the benefit of farmers, and was entered into between the Debtors and the CCC by a personal agreement. The secured party (the FmHA) is ineligible to participate in the programs offered by the CCC and to seal grain, and, therefore, the FmHA should not be allowed to "reap" the benefit which this government subsidy program offers to qualifying farmers. Moreover, the Debtors argue that this Court should allow the Debtors to retain the full amount of the "sealing profit" under the balancing of the equities provision of 11 U.S.C. § 552(b).

The FmHA responds by arguing that the "sealing profit" is proceeds of the collateral subject to the prepetition security interest, and the equities provision of § 552(b) is not meant to address the situation presently before the Court. Rather, the equities provision involves a situation where the debtor in possession uses other assets of the estate (assets that would be available to unsecured creditors) to produce a profit with the collateral of the secured creditor. In such a situation, it would be inequitable to allow the secured creditor to obtain the entire profit, because the funds from the unsecured creditors were used to create the profit.

The government also argues that under the equities of the situation, the Debtors should not be allowed to retain the "sealing profit," because such a ruling would have the effect of allowing the Debtors to take advantage of two separate programs at the expense of the government which operates them both. The Debtors received the benefits of the loan program administered by the FmHA, in exchange for which they signed a security agreement that covered their crops for the 1985 season. Due to their financial hardship, the Debtors filed for Chapter 11 protection and have indicated their inability to pay off this entire government loan. However, they seek to retain the benefits from another government administered program, rather than turning those benefits over as part of the security agreement. The FmHA contends that the Court should look beyond the form of these government programs and, in balancing the equities of the situation, require the Debtors to pay the amount of the sealing profit which they have already received from the CCC over to the FmHA as part of the proceeds from the collateral on the FmHA loan.

### Standard of Review

An issue which neither party addressed in their briefs on this appeal is the standard of review which this Court must use in reviewing the decision of the bankruptcy court. According to Bankruptcy Rule 8013:

"On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

This rule makes it clear that this Court's review of the bankruptcy judge's findings of fact is to be under the clearly erroneous standard, while matters of law are to be considered novo *by this Court.*

■■■ Applying this rule to the present case, the Court finds that to the extent the bankruptcy court arrived at its decision in favor of the FmHA after conducting a balancing of the equities as described in § 552(b), this decision is a finding of fact

and the clearly erroneous standard of review applies. On the other hand, the bankruptcy court's decision that the "sealing profits" under the CCC subsidiary program are "proceeds" within the language of § 552(b) is a conclusion of law. Using these standards of review for the relevant parts of the bankruptcy court's decision, the Court AFFIRMS the decision of the bankruptcy court.

### Proceeds

■ The first issue which this Court must address is whether the "sealing profits" obtained by the Debtors under the CCC program should be characterized as "proceeds" which attach to or follow the security interest which the FmHA held on the Debtors' 1985 crop. The bankruptcy court held that these government payments to the farmers were proceeds of the secured creditor's collateral, although the bankruptcy court did not specifically discuss the wording of the security agreement and financing statements involved in the FmHA loan. There is no dispute that the FmHA held a perfected security interest in the Debtors' 1985 corn crop, which corn the Debtors subsequently "sealed" pursuant to the CCC price support program.

Although the Debtors have argued on appeal that the security agreement and financing statement of the FmHA do not make a specific reference to government payments or a contract right, this Court has not been presented with the issue of whether the agreements contained in these documents are broad enough to include the proceeds of the sale of the collateral. According to the Seventh Circuit in *Matter of Schmaling*, 783 F.2d 680, 682 n. 2 (7th Cir.1986), a security interest will continue in proceeds of collateral described in the security agreement unless the agreement or the secured party specifies otherwise. Therefore, the issue presented to this Court is whether the government payments for the "sealing profit" should be treated as proceeds of the security interest.

The bankruptcy court determined that the "sealing profits" were proceeds of the collateral, and this Court finds ample authority to support this decision in the the Seventh Circuit's decisions in *J. Catton Farms v. First National Bank of Chicago*, 779 F.2d 1242 (7th Cir.1985) and *Matter of Schmaling*, 783 F.2d 680 (7th Cir.1986). In *J. Catton Farms*, the Court held that the creditor, a bank, was entitled to the proceeds from the debtor's PIK contract because the security interest between debtor and creditor covered contractual rights and general intangibles which the debtor held or would acquire in the future. The Court characterized the payment made to the debtor under the PIK program as a receivable and distinguished it from the proceeds which a farmer obtains from the sale of his crops, because the PIK proceeds are paid as a result of *not* planting crops. Nevertheless, because the security agreement included such items as "receivables," the Court held that the debtor had to pay the PIK proceeds to the creditor.

In *Schmaling*, the Seventh Circuit reasserted its position that in-kind payments under the PIK program were not the proceeds of crops because one condition for participating in the program was that individuals not plant a crop. *Id.* at 683. From this, the Court concluded that a security agreement which covered grown or growing crops (and, by law, their proceeds) did not extend to the in kind payments received by the debtors for participating in the PIK program and not raising crops.

These cases indirectly support the bankruptcy court's decision (and the position of the FmHA) that the "sealing profits" are proceeds, because the government subsidy in this case *does* involve the growing of crops. Because the "sealing profit" paid by the CCC was the result of the Debtors' growing and harvesting crops, which were covered by the security agreement, that government subsidy is properly characterized as a "proceed" for purposes of the bankruptcy law and the security agreement. Even though the security agreement and finance statement do not specifically refer to government payments or subsidies, the Court is not persuaded that the "sealing profit" should be treated any differently than a proceed from a grown crop.

*See, In re Settles,* 69 B.R. 634, 636 n. 1 (Bankr.C.D.Ill.1987).

### Balancing of the Equities

 The second issue involved in this case is whether the equities of this case favor paying these "profits" to the debtor under § 552(b). This Court agrees with the bankruptcy court that the equity exception of § 552(b) is not applicable to the facts of this case. As explained by the Seventh Circuit in *J. Catton Farms:*

> "The equity exception is meant for the case where the trustee or debtor in possession uses other assets of the bankrupt estate (assets that would otherwise go to the general creditors) to increase the value of the collateral." *See, e.g., In re Village Properties, Ltd.,* 723 F.2d 441, 444 (5th Cir.1984). Suppose a creditor had a security interest in raw materials worth $1 million and the debtor invested $100,000 to turn those raw materials into a finished product which he then sold for $1.5 million. The proceeds of this sale (after deducting wages and other administrative expenses) would be added to the secured creditor's collateral unless the court decided that it would be inequitable to do so—as well it might be, since the general creditors were in effect responsible for much or all of the increase in the value of the proceeds over the original collateral." 779 F.2d at 1246.

In the present case, the Debtors have not used any assets of the bankrupty estate in order to obtain the "sealing profits" which they seek. The bankruptcy court recognized this fact when it stated:

> "The 'sealing profit' was produced because of a passive investment of Farmers' collateral, as compared to an active effort by the Debtors involving an expenditure or usage of Debtors' other assets which might otherwise be available for general creditors. All the Debtors did was to take the corn crop, which was the subject of the Farmers' security agreement, and place it in a government program which produced an increased profit of 29 cents per bushel." *In re George,* 62 B.R. 671, 673 (Bankr.C.D.Ill. 1986).

This Court finds that the bankruptcy court's decision not to apply the equity exception was a question of law, which this Court affirms. Had the bankruptcy court chosen to apply the equity exception and then conducted a balancing of the equities, this Court would have been required to review that balancing and, to the extent that the bankruptcy court's decision turned upon factual conclusions of the bankruptcy court, this Court would have reviewed those decisions under the clearly erroneous standard. However, the bankruptcy court decided, as a matter of law, that the equity exception was not applicable to this case, and, therefore, did not conduct a balancing of the equities. This Court has reviewed that legal determination *de novo* and affirms it.

### Substitution and Set–Off

 In arguing that the Court should allow the Debtors to retain the "sealing profits," the Debtors suggest that they could have substituted corn purchased on the open market for the corn subject to the FmHA's security interest. Under this scenario, they would have been able to "seal" the substituted corn (rather than the encumbered corn) and would have been entitled to the "sealing profit" without any claim from the FmHA.

The Court notes that this scenario is exactly what the Debtors proposed in a petition before the bankruptcy court in *In re Settles,* 69 B.R. 634 (Bankr.C.D.Ill.1987). The bankruptcy court permitted the Debtors to participate in the CCC program, if eligible, expressly refusing to decide the issue of their eligibility to participate with a substituted crop. However, the *Settles* court went on to hold that if the debtors were allowed to participate in the CCC program with a substituted crop, the FmHA would have no claim to the "sealing profit."

Despite this holding by the bankruptcy court, this Court believes that the substitution issue does not require reversal of the bankruptcy judge's decision. The issue of whether substitution would have been allowed or not is not presently before this Court, because the Debtors did not substitute their encumbered corn with corn pur-

**892**

chased on the open market prior to sealing. This Court must decide cases on the basis of the facts before it, not on speculation or a suggestion of what could have been. Even if the bankruptcy court's decision in *Settles* provides a means for future debtors to avoid the impact of this decision, the resolution of that issue is better left to the eligibility requirements of these government programs or a case in which the issue is squarely presented to the Court in a "case or controversy."

Finally, in its order of July 16, 1986, the bankruptcy court included a reference to the Debtors' argument which attacks the FmHA's request for set-off. The bankruptcy court determined that the FmHA was not relying on the right of set-off, and therefore, did not rule on that issue. Consequently, the issue of set-off is not before this Court. Moreover, there is no need for the Court to reach that issue because it affirms the bankruptcy court's decision in favor of the FmHA.

CONCLUSION

The Court orders that the bankruptcy court's decision is AFFIRMED and orders the Debtors to pay over to the FmHA the sum of $8,700.